**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

―――――――――――――――――――――

|  |  |  |
|---|---|---|
| **ROBERT L. CLARK, et al.,** | : | |
| **Plaintiffs,** | : | |
| v. | : | **CIVIL NO. 08-CV-1409** |
| | : | |
| **EMC MORTGAGE CORPORATION,** | : | |
| **Defendant.** | : | |
| | : | |

―――――――――――――――――――――

**MEMORANDUM AND ORDER**

**RUFE, J.**                                                      **January 29, 2009**

Through an Amended Complaint,[1] Plaintiff mortgagors Roberta L. Clark, Joann Clark, and Regina Coughlin ("Plaintiffs") allege that Defendant EMC Mortgage Corporation ("EMC" or "Defendant"), which services their mortgage, has committed various acts in violation of the federal Fair Debt Collection Practices Act ("FDCPA") (Count I),[2] the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")[3] and common law regarding consumer fraud (Count II), and the Pennsylvania common law of Intentional Misrepresentation (Count III). Presently before the Court is Defendant's Motion to Dismiss Counts II and III of the Amended Complaint, for unfair trade practices and consumer fraud, and intentional misrepresentation, respectively.[4] For the reasons that follow, the Motion will be granted in part and denied in part.

―――――――――――――――――

[1] Doc. No. 5.

[2] 15 U.S.C. §§ 1692-1692(p) (2006).

[3] 73 P.S. §§ 201-1 et seq.

[4] Doc. No. 8.

# I. BACKGROUND

Plaintiffs are the mortgagors of a mortgage covering their home in Warrington, Pennsylvania.[5]  The mortgage is serviced by Defendant, a corporation in the business of obtaining, marketing and servicing mortgages throughout the United States.

The Court begins by noting that Plaintiffs have been parties in interest to at least two prior legal actions involving the mortgage.  Previously, Plaintiffs lapsed in making their monthly payment to EMC's predecessor-in-interest on the mortgage, Norwest Bank of Minnesota, N.A. ("Norwest").  As a consequence, in 2000, Norwest filed a complaint in mortgage foreclosure against Plaintiffs in the Court of Common Pleas of Bucks County, Pennsylvania.[6]  A default judgment was entered against Plaintiffs in the action on January 12, 2001.

Subsequently, in 2003, Plaintiffs were class plaintiffs in a class action brought against EMC Mortgage Corporation, Defendant herein, which by then held Plaintiffs' mortgage Note.[7]  The action was settled on a class-wide basis in 2005.  As an aspect of the settlement, Plaintiffs and Defendant entered into a Loan Modification Agreement ("Modification Agreement"), through which class plaintiffs fully released all claims against EMC in exchange for an adjustment in their mortgage payment obligations.[8]  In particular, the Modification Agreement requires Plaintiffs to make a

---

[5] Unless otherwise noted, and in light of the standard governing the Court's review of this Motion, see Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989), the background information is drawn from the allegations set forth in the Amended Complaint.

[6] The foreclosure action was docketed as Norwest Bank of Minnesota, N.A. v. Robert L. Clark, Joann Clark and Regina M. Coughlin, Court of Common Pleas of Bucks County No. 2000-06875-14-1.

[7] The class action was docketed as Clark, et al. v. EMC Mortgage Corp., Court of Common Pleas of Bucks County No. 2003-01810-13-5.

[8] Am'd Compl. Ex B (Loan Modification Agreement between Robert L. Clark, Joann Clark and Regina M. Coughlin and EMC Mortgage Corporation).  Paragraph Three of the Modification Agreement states, in relevant part, "[a]s consideration for the Lender [EMC] entering into this Agreement, Borrower hereby remises, releases and

monthly principal and interest payment of $684.30 for 329 months ("Mortgage Payment"), in addition to monthly property tax, insurance and other escrow amounts (collectively, "Escrow"), beginning in February, 2006.  Plaintiffs allege that they have made all mortgage and escrow payments as required by the Modification Agreement since February, 2006,[9] and through February, 2008, after which their remitted mortgage payments were rejected and returned by EMC.[10]

Plaintiffs received written notice from an EMC representative dated February 8, 2008, referring explicitly to their mortgage and stating the following:

Dear Mortgagor(s):

Do you want to avoid foreclosure?

. . . .

Do you want to sell your house, but owe more than it is worth?

If you answered "yes" to any of these questions, you need to contact EMC Mortgage immediately at [telephone number].  We may have a program to assist you, but the only way we can help is if you call now.  The longer you wait, the worse your situation becomes.  Foreclosure is serious, and unless you act quickly, you may lose your home and your credit. . . .

Sincerely,

---

forever discharges Lender, its subsidiaries, affiliates, assigns and successors, and Lender's agents, servants, officers, principals, trustees and employees, from any and all manner of actions, causes of action, suits, debts, judgments, dues, accounts, covenants, claims and demands whatsoever, in law or equity, that the Borrower . . . had, has or may have for any cause or thing whatsoever relating to this Agreement or the extension of credit to Borrower evidenced by the original Note and Security Instrument.  Borrower understands that this is a full and final release of all claims which Borrower may have against Lender . . . ." Am'd Compl. Ex. B ¶ 3.

[9] Indeed, Plaintiffs allege that because they began their mortgage payments one month earlier than required under the Modification Agreement by remitting payment beginning in January, 2006, they have consistently been one month ahead in their payments, with the exception of one four-month period between July 2006 and October 2006, when they were neither behind nor ahead due to a missed payment in July 2006.  A double payment in October 2006 put Plaintiffs once again one month ahead in paying off the mortgage.  See Am'd Compl. ¶ 29.

[10] It appears that Plaintiffs have remained current with their escrow payments.  See Am'd Compl. ¶ 31.

EMC Loan Workout Department[11]

Upon receipt of the February 8, 2008 letter, Plaintiff Robert L. Clark immediately contacted EMC via telephone.  He explained to an unidentified EMC representative that he had fully complied with his payment obligations under the Modification Agreement.  Defendant's representative told Clark that EMC had no record of the Modification Agreement, and no record of receiving Plaintiffs' payments pursuant to it.  Meanwhile, the records of the Bucks County Recorder of Deeds show that EMC filed the Modification Agreement with the Recorder after its formation.  Plaintiffs made "repetitive pleas" to EMC during February, 2008, to acknowledge the Modification Agreement and payments made thereunder, but to no avail.[12]   EMC has not acknowledged receiving Plaintiffs' payments made since 2006.

On February 22, 2008, EMC filed a praecipe in the Court of Common Pleas of Bucks County to list Plaintiffs' home for sheriff's sale, in prosecution of the judgment entered in the 2001 mortgage foreclosure action.  Upon the praecipe, the Sheriff of Bucks County listed Plaintiffs' home for a sheriff's sale scheduled for June 12, 2008.  On March 17, 2008, counsel for EMC allegedly demanded that Plaintiffs pay a sum of $165,229.65 by April 1, 2008 or face continued foreclosure. This figure allegedly includes legal costs and fees related to the sheriff's sale as well as the sheriff's commission of two percent.  After attempts to convince EMC of the existence of the Modification Agreement and the fact of Plaintiffs' compliance with it failed, on March 25, 2008, Plaintiffs filed

---

[11] Am'd Compl. Ex. D.

[12] Am'd Compl. ¶ 36.

-4-

this action.[13]  On June 3, 2008, Plaintiffs filed the Amended Complaint, after which Defendant filed

the instant Motion to Dismiss in part.

        Count I of Plaintiffs' Amended Complaint, brought under the FDCPA, is not at issue.

Plaintiffs bring Count II, captioned "Consumer Fraud," under both the UTPCPL and the common

law of consumer fraud, and bring Count III under the common law of intentional misrepresentation.

In Count II, Plaintiffs make numerous allegations regarding EMC's putatively fraudulent or

deceptive conduct.  For reasons that are unclear to the Court, Plaintiffs, through counsel, make little

effort to separate their statutory and common law claims under Count II, despite the fact that the

causes of action under which they proceed are not necessarily identical.  In any event, the allegations

mainly concern EMC's conduct after the formation of the Modification Agreement, including its

attempts to collect the improperly claimed debt, its allegedly false statements and misrepresentations

regarding the existence of the Modification Agreement and the non-receipt of payments thereunder,

and its actions surrounding the deferred sheriff's sale, including the imposition of various fees.

Many of the allegations refer to EMC's contractual obligations under the Modification Agreement.[14]

However, certain other allegations under Count II describe EMC's conduct prior to the formation

of the Modification Agreement, when the original mortgage agreement was the operative instrument.

These include allegations that Plaintiffs entered into the Modification Agreement because of

---

[13] See Compl. [Doc. No. 1].  Pending the outcome of this litigation, EMC's foreclosure counsel (different counsel than that representing EMC in this action) filed a writ requesting that the sheriff's sale of Plaintiff's home be postponed, and the writ was granted.  See Am'd Compl. ¶ 54.  It also appears that EMC's foreclosure counsel, by praecipe, moved the state court to vacate the default judgment in the foreclosure action of January, 2001, and to discontinue the action without prejudice.

[14] See e.g., Am'd Compl. ¶¶ 85, 88(j).

Defendant's "misrepresentations of material fact" and deceptive actions.[15]  Count III, in turn, makes no new factual allegations, but simply incorporates all of the preceding paragraphs in the Amended Complaint, including those comprising Count II.

In the present Motion, Defendant moves to dismiss Plaintiffs' statutory claim and common law claims for fraud and misrepresentation, or Counts II and III, under Federal Rule of Civil Procedure 12(b)(6).  Defendant argues that the "gist of the action" doctrine recognized under Pennsylvania law precludes Plaintiffs from bringing in tort what amount to ordinary claims for breach of contract.[16]  In the alternative, Defendant argues Plaintiffs' claims should be dismissed for failure to meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).  The parties have briefed the issues and the matter is ready for disposition.

## II.  DISCUSSION

### A.      Legal Standard Under Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint, draws all reasonable inferences therefrom and construes them in the light most favorable to the plaintiff.[17]  The United States Supreme Court has recently clarified this standard, explaining that "[a] plaintiff's obligation

---

[15] See e.g., id. ¶¶ 88(g), 89, 90, 92.

[16] Although Plaintiffs do not address the basis for the Court's jurisdiction to decide the state law claims brought in Counts II and III, the Court finds it has supplemental jurisdiction over these claims.  Its jurisdiction to adjudicate Count I, brought under the federal FDCPA, is undisputed, and derives from the Act itself, 15 § U.S.C. 1692(k), and 28 U.S.C. §§ 1331 (2006).  There is supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the claims share a "common nucleus of operative fact" with the FDCPA claim, namely, Defendant's allegedly improper attempt to collect a debt.  See DeAsencio v. Tyson Foods, Inc., 342 F.3d 302, 308 (3d Cir. 2003).

[17] See Rocks, 868 F.2d at 645.

to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[18]  Rather, a plaintiff must allege facts that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[19]  A court should not grant a 12(b)(6) motion if, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[20]  When "deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record." [21]

## B.    The Gist of the Action Doctrine

Pennsylvania's gist of the action doctrine is a common law doctrine "designed to maintain the conceptual distinction between breach of contract claims and tort claims."[22]  The Pennsylvania Superior Court has described the doctrine as follows:

> As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims. . . . Thus, although mere non-performance of a contact does not constitute a fraud, it is possible that a breach of contract also gives rise to an actionable tort.

[18] Bell Atl. Corp. v. Twombly, -- U.S. --, 127 S. Ct. 1955, 1965 (2007) (citation omitted).

[19] Id.

[20] Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002).

[21] Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 190 (3d Cir. 1999) (citing Pension Benefit Gaur. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

[22] Etoll v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (citing Bash v. Bell Tel. Co., 601 A.2d 825 (1992), rev'd on other grounds by Keefer v. Keefer, 741 A.2d 808, 812 (Pa. Super. Ct. 1999)); see also Reardon v. Allegheny College, 926 A.2d 477, 486-87 (Pa. Super. Ct. 2007).  The Pennsylvania Supreme Court has not directly addressed the gist of the action doctrine.  Despite the absence of a ruling adopting the doctrine from the state's high court, the rulings of the intermediate court on the matter "must be accorded significant weight and should not be disregarded absent persuasive indication that the highest court would rule otherwise."  U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996).  The Pennsylvania Superior Court and several United States District Courts have predicted that the Pennsylvania Supreme Court will adopt the doctrine, see eToll, 811 A.2d at 14; Freedom Properties, L.P. v. Lansdale Warehouse Co. Inc., No. 06-5469, 2007 WL 2254422, at *4-*5 (E.D. Pa. Aug. 2, 2007), as does this Court herein.

> To be construed in tort, however, the wrong ascribed to the defendant must be the gist of the action, the contract being collateral. The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. In other words, a claim should be limited to a contract claim where the parties' obligations are defined by the terms of the contracts and not by the larger social policies embodied by the law of torts. [3][2]

Courts applying Pennsylvania law have applied the gist of the action doctrine to bar tort claims (1) where the claims arise "solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."[24]  Pennsylvania has "not carved out a categorical exception" to the gist of the action doctrine for claims of fraud.[25]

In the seminal Pennsylvania case, eToll, Inc. v. Elias/Savion Advertising, Inc., the plaintiff, a product developer, entered into an agreement with the defendant to market and advertise one of its products.[26]  Displeased with the defendant's execution of the contract, the plaintiff brought suit for fraud, breach of fiduciary duty, professional negligence, and breach of contract.[27]  In its fraud claim, the plaintiff alleged that the defendant had committed various fraudulent acts with respect to

---

[23] eToll, 811 A.2d at 14 (citations omitted); see also Hart v. Arnold, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) (same).

[24] eToll, 811 A.2d at 19 (citations omitted).

[25] Id.

[26] Id. at 11.

[27] Id. at 12.

-8-

the contract in question.[28]   The eToll trial court dismissed the tort claims, and upon appeal, the Superior Court of Pennsylvania affirmed the dismissal.[29]

The Superior Court held that the gist of the action doctrine barred plaintiff's tort claims because "all of the alleged acts of fraud arose in the course of the parties' contractual relationship," the contested "duties regarding billing and performance were created and grounded in the parties' contract," and the damages alleged were compensable in an ordinary contract claim.[30] The court noted that "[t]he fraud at issue was not so tangential to the parties' relationship so as to make fraud the gist of the action," concluding instead that "the fraud claims are inextricably intertwined with the contract claims."[31]

Since eToll, courts have established few bright-line rules in the area, but rather have explored, on a case-by-case basis, the applicability of the gist of the action doctrine to claims of fraud that relate to party contracts, including claims of fraud in the inducement of such contracts.[32]

_____

[28] In particular, plaintiff eToll, Inc., alleged that defendant had "(1) deceived [plaintiff] into thinking that certain goods and services were being billed to [it] at cost, when in fact the [defendants] were charging inflated prices; (2) deliberately submitted bills containing fictitious charges and unauthorized markups; (3) concealed less expensive ways to accomplish a 'market launch' of the product; (4) took undisclosed kickbacks and commissions; (5) told [plaintiff] that they had performed certain services under the contract when they had not done so; (6) misrepresented to [plaintiff] that certain targets had no interest in email products, when in fact interest was high; and (7) concealed these schemes in order to perpetuate the overbilling and fraud."  Id. at 20.

[29] Id. at 24.

[30] Id. at 20-21.

[31] Id. at 21.

[32] See, e.g., Williams v. Hilton Group PLC, 93 Fed. Appx. 384, 386 (3d Cir. 2004) (not precedential) (claim of fraud in the inducement of a contract which defendant allegedly never intended to honor barred by gist of the action doctrine on particular facts of case); Freedom Properties, 2007 WL 2254422, at *6 ("promises made to induce a party to enter into a contract that eventually become part of the contract itself cannot be the basis for a fraud-in-the-inducement claim under the gist of the action doctrine") (citations omitted); Sullivan v. Chartwell Investment Partners, 873 A.2d 710, 718-20 (Pa. Super. Ct. 2005) (allegations of promises defendant never intended to keep which induced employee to assume additional duties not barred by gist of the action doctrine as collateral to basic employment contract between the parties).

Exemplifying the approach of the Pennsylvania courts in looking past mere categories of fraud or other torts to examine the relationship between such claims and any actual or potential, related contract claim is the case <u>Strausser v. PRAMCO, III</u>,[33] decided in 2008 by the Pennsylvania Superior Court.   In that case, plaintiff mortgagor brought an action for breach of contract, negligence, misrepresentation and fraud against the mortgagee, which, plaintiff claimed, had broken a promise to forbear on foreclosing on a mortgaged property.   Plaintiff's tort claims were based on allegations that the mortgagee had through misrepresentation induced the plaintiff to falsely believe that the mortgage would be refinanced, that payments to the mortgagee made on behalf of plaintiff would be treated in a particular fashion, and that plaintiff was required to pay certain amounts and in a certain manner.   The court affirmed the trial court's dismissal of the tort claims on gist of the action grounds, finding that the claims were "directly related to the underlying contractual rights and obligations of the parties as defined by the loan agreements and mortgages between them, and all of them can be resolved only through a determination of those contractual rights and obligations."[34] In part, it based this finding on an evaluation of the injuries claimed for the torts alleged, which, the court found, were apparently owed under the contract in question and hence compensable through a contract action, if at all.

C.      **Gist of the Action Doctrine Bars Certain Claims As Pleaded**

Because they arise entirely within the context of the parties' ongoing contractual relationship and are not merely collateral to that relationship, as pleaded, Plaintiffs' common law fraud and misrepresentation claims are barred by the gist of the action doctrine.   These claims will

---

[33] 944 A.2d 761, 767-68 (Pa. Super. Ct. 2008).

[34] Id. at 768.

be dismissed without prejudice.  However, Plaintiffs' statutory claim will not be dismissed on this basis.

As noted previously, Plaintiffs claim EMC committed common law fraud and intentional misrepresentation by insistently and falsely representing, from February, 2008, onward, that no Modification Agreement existed and no payments pursuant to it had been received, and by engaging in unspecified "deceptive actions and representations" that caused Plaintiffs to enter into the Modification Agreement in the first instance.[35]  The Modification Agreement itself pertained to Plaintiffs' original mortgage, the Note for which was held by Defendant at the time the Modification Agreement was executed.  Thus, Plaintiffs' fraud and misrepresentation claims are encompassed entirely within the parties' uninterrupted contractual relationship.

Moreover, the common law fraud and misrepresentation claims appear "directly related to the underlying contractual rights and obligations of the parties as defined by the loan agreement[] and mortgage[] between them, and . . . can be resolved only through a determination of those contractual rights and obligations."[36]  Fundamentally, Plaintiffs' allegations involve issues as to which of the two mortgage agreements – the original mortgage or the Modification Agreement – actually governed the parties' relationship, which must be addressed before the propriety of EMC's conduct with respect to the Modification Agreement may be assessed.

Additionally, in substance, Plaintiffs' allegations concern how the parties altered their original agreement and entered into the Modification Agreement and the performance of the parties after the Modification Agreement was struck.  While the latter point of focus in the pleadings

---

[35] Am'd Compl. ¶ 90.

[36] Strausser, 944 A.2d at 768.

inescapably states, at most, a claim of fraud in the performance of contractual obligations that is barred by the gist of the action doctrine,[37] the former allegations could conceivably be amended to properly state a valid fraud in the inducement claim which might survive the application of the doctrine.  However, as pleaded, the allegations in the Amended Complaint suggesting a potential fraud in the inducement claim are insufficiently distinguished from Plaintiffs' potential contract cause of action to stand.  The injuries claimed by Plaintiffs with respect to their tort claims reveal as much.[38]  Under the common law of Pennsylvania, both fraud and misrepresentation require a pleading of damage as a proximate result of the tort.[39]  Yet, the injuries pleaded by Plaintiffs for the claimed torts are, "all of the payments made to EMC not credited pursuant to the [Modification] Agreement; charges added to plaintiffs' account for the pursuit of the sheriff's sale, attorney's fees and costs."[40]  Plainly, all of these injuries relate directly to actions or omissions which were allegedly wrongful in light of the parties' obligations under the Modification Agreement.  In other words, each of these injuries flows from an alleged breach of the parties' contract, not a collateral tort.  Thus, the "success" of Plaintiffs' common law fraud and misrepresentation claims is "dependent on the terms

---

[37] eToll, 811 A.2d at 19 (citations omitted) (gist of the action doctrine typically precludes claims of fraud in the performance of duties created through contract).

[38] Am'd Compl. ¶¶ 91, 93.

[39] See Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999) (intentional misrepresentation claim includes element of injury proximately caused by justifiable reliance on misrepresentation); Colaizzi v. Beck, 895 A.2d 36, 39 (Pa. Super. Ct. 2006) (fraud claim requires showing of injury proximately caused by justifiable reliance on the fraudulent representation).

[40] Am'd Compl. ¶ 93.  It is indisputable that Plaintiffs' mortgage payments themselves do not constitute a cognizable tort injury, as such payment was owing under one or the other mortgage agreement, regardless of which one applied.  It also is clear that a failure to credit any such payment received would be a contractual breach on the part of EMC, and that penalties erroneously assessed to, and associated costs sustained by, Plaintiffs as a result of the breach could also be properly sought through a contract claim.

of a contract" between the parties.[41]

For all of these reasons, the Court finds that Plaintiffs' common law fraud and misrepresentation claims are inextricably intertwined with, and depend upon a determination of, the parties' respective contractual duties.  Plaintiffs were capable of seeking redress for the injuries alleged in a breach of contract claim grounded in the Modification Agreement.  That Plaintiffs, in their Amended Complaint, declined to bring a breach of contract claim is of no moment in the analysis.[42]  As pleaded, Plaintiffs' common law fraud and intentional misrepresentation claims are barred by the gist of the action doctrine, and will be dismissed without prejudice.[43]

Plaintiffs' claim under the UTPCPL is another matter.  As noted previously, Plaintiffs inexplicably plead Count II of the Amended Complaint by interweaving claims of common law fraud and violation of the UTPCPL.  Perhaps following Plaintiffs' less than exemplary lead, Defendant's Motion does not distinguish the statutory claim from the common law claim brought under Count II in seeking the dismissal of both claims.  Yet, Defendant presents no support for the proposition, implicit in its Motion, that UTPCPL claims of fraudulent or deceptive practices toward consumers may be, like common law fraud claims, subject to dismissal under the gist of the action doctrine.  In its review of state and federal cases applying the doctrine, the Court has not uncovered support for this proposition.   Nor does Defendant show that Plaintiffs' common law fraud  cause of action and its UTPCPL cause of action consist of identical elements, or are subject to identical

---

[41] eToll, 811 A.2d at 19.

[42] See, e.g., Jones v. ABN Amro Mortgage Group, Inc., No. 07-4328, 2008 WL 1722295, at *4 (E.D. Pa. Apr. 10, 2008) (barring on gist of the action grounds tort claim "premised on either a RESPA violation or an alleged breach of [a] mortgage agreement" despite fact that no breach of contract action was actually set forth in complaint).

[43] Disposing of the Motion in this fashion, the Court does not reach Defendant's arguments regarding the sufficiency of specificity found in Plaintiffs' pleadings.

legal standards, including pleading requirements.  This is not self-evident.[44]  Thus, Defendant's arguments as to Plaintiffs' common law claims do not necessarily apply with equal force to Plaintiffs' statutory claim.  Despite the failure of the parties to do so in a serviceable fashion, the Court must consider Plaintiffs' statutory and common law claims as what they are – separate claims. The Court finds no basis to dismiss Plaintiffs' UTPCPL claim under Count II, and accordingly, Defendant's Motion as to that claim will be denied.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Counts II and III of the Amended Complaint will be granted as to Plaintiffs' common law claims, but denied as to Plaintiffs' claim under the UTPCPL.  An appropriate Order follows.

---

[44] See Hunt v. United States Tobacco Company, 538 F.3d 217, 225 (3d Cir. 2008) (noting that "some authority" supports the proposition that a plaintiff alleging deception, as opposed to fraud, under the catch-all provision of the UTPCPL need not prove all elements of common law fraud, although justifiable reliance must be shown).  It appears likely that Plaintiffs proceed under the catch-all provision of the UTPCPL, 73 P.S. § 201-2(4)(xxi).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                               :
**ROBERT L. CLARK, et al.,**                   :
       **Plaintiffs,**                      :
    **v.**                                       :    **CIVIL NO. 08-CV-1409**
                                               :
**EMC MORTGAGE CORPORATION,**                  :
       **Defendant.**                       :
_____:

<u>**ORDER**</u>

      **AND NOW**, this 29th day of January 2009, upon consideration of Defendant's Motion to Dismiss in Part the Amended Complaint in the above captioned matter [Doc. No. 8], and Plaintiffs' Response in Opposition [Doc. No. 10], it is hereby **ORDERED** that the Motion is **GRANTED IN PART AND DENIED IN PART**, as follows:

    1.      The Motion is **granted** as to Plaintiffs' common law fraud claim under Count II, and that claim is **dismissed** without prejudice;

    2.      The Motion is **denied** as to Plaintiffs' statutory claim pursuant to 73 P.S. § 201.1 <u>et seq.</u>, also brought in Count II, and that claim remains in this action;

    3.      The Motion is **granted** as to Count III, and that Count is **dismissed** without prejudice.

      It is so **ORDERED**.

                            **BY THE COURT:**

                            /s/ Cynthia M. Rufe
                            _____
                            **CYNTHIA M. RUFE, J.**